UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Patrica Clapper,

    Plaintiff,

v.                                                                  Case No. 06-10093

HVM, L.L.C., a foreign limited liability            Honorable Sean F. Cox
company, d/b/a Extended Stay America,

    Defendant.
_____/

**OPINION & ORDER
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

    Plaintiff Patrica Clapper ("Plaintiff") filed this negligence action against HVM, L.L.C. d/b/a Extended Stay America ("ESA") after sustaining personal injuries when she fell down a darkened staircase at an ESA hotel on June 6, 2005. The matter is currently before the Court on ESA's Motion for Summary Judgment. The Court heard oral argument on February 1, 2007. For the reasons set forth below, Defendant's Motion for Summary Judgment shall be DENIED.

BACKGROUND

    Plaintiff, a 60-year old resident of Illinois, checked into an ESA hotel in Novi, Michigan ("the Hotel"), on June 3, 2005, and was scheduled to check out the morning of June 6, 2005. On June 5, 2005, there were severe thunderstorms in the area (Pl.'s Dep. Tr. at 28) and it is undisputed that the Hotel lost electrical service that night at approximately 7:00 or 8:00 p.m. (Davis Dep. at 27-28; Pl.'s Dep. at 28-29).

    Plaintiff was already in her room, room number 212, when she became aware that the

1

electricity at the Hotel went out. (Pl.'s Dep. at 28-29). At that time, a friend of Plaintiff's, Lanny Clark ("Clark"), had been visiting Plaintiff in her room and after the electricity went out, he stayed with Plaintiff that night. (*Id*. at 30). Neither Plaintiff nor Clark left the room on the night of June 5th after the electricity went out. When Plaintiff awoke the following morning, she was aware that the electricity was still out at the Hotel. (Pl.'s Dep. at 29).

Plaintiff testified that she left her room the morning of June 6th with Clark and her luggage and was headed for the lobby because she had to check out that morning and also had a doctor's appointment at 8:00 a.m. She testified that she did not know there was more than one staircase available and used the staircase at issue because that is where the front desk lobby is located. (*Id*. at 32 & 46). She testified that she did not see any map of the hotel in her room. (*Id*. at 64-65).

She states that she could "somewhat" see when she entered the Hotel hallway because there were some dim emergency lights in the hallway. She and Clark then walked down toward the elevators and she attempted to find where the stairway was because the elevators were not operating. Plaintiff testified that "[i]t was very dark. I had to get close up to the numbers on the doors to see if it was a room or a stairwell or a janitor's room. I found the stairwell near the elevator." (*Id*. at 32-33). She testified that the stairwell doors were not propped open. Clark was behind Plaintiff, who was carrying a suitcase, a purse and a tote bag. She states that after she opened the stairwell door "[i]t was pitch black in the stairwell, and I attempted to determine which way the stairs went. I ran my hand along the wall hoping to find a handrail, and when I did not, I assumed that was a landing so I stepped in that direction," and that is when I fell. (*Id*. at 33-34).

Plaintiff testified that she fell forward, hit the landing, slid into the wall and hit her elbow first. (*Id*. at 35). She states that Clark "hollered 'Where are you? Are you okay?' and I believe at that point two other people entered the stairwell, and I remember him saying, 'Be careful. There's someone at the bottom of the stairs.' Somebody called EMS. At that point somebody must have opened the door at the bottom. I don't remember, but there was some light in there at that point." (*Id*. at 36).

Plaintiff was taken from the Hotel to Providence Hospital by EMS. (*Id*. at 44). She suffered a left elbow fracture dislocation, severed tendons and had two broken bones. (*Id*. at 48). Her injuries to her elbow required surgery and Plaintiff still has screws in her elbow. (*Id*. at 48-48).

ESA Manager Jason Davis ("Davis") testified that he checked the Hotel at approximately 8:30 or 9:00 p.m. on the night of June 5th, after learning that the electricity was out. (Davis Dep. at 28). He states that the Hotel's emergency lights were still working at that point, but that he placed some flashlights in the hallways and stairs for when the emergency lights would fail. (*Id*.) Davis learned early the next morning, however, that the Hotel guests were taking, for their own use, the lights that he had placed out. (*Id*. at 35-36).

Davis testified that the ESA staff did not check on guests of the Hotel after the electricity went out. (*Id.* at 29). Because the Hotel's telephone service was not operational, guests could not communicate with the front desk if they needed help going from their room. (*Id.* at 31). Davis testified that he knew guests would be checking out of their rooms the next morning, but management had no discussions about how people from upper floors would get down to the front desk. (*Id*. at 32). The Hotel had numerous illumination devices, because it had recently

3

experienced a four-day blackout, but ESA representatives did not go to individual rooms to hand out any devices. (*Id.* at 29-34).

Davis confirmed that on the morning of the accident the only way a person could get off the second or third floors of the Hotel was by using one of the Hotel's three staircases. (*Id.* at 39-40). He also testified that, unless a guest came down to the front desk to ask, ESA staff did not tell guests that they should use one staircase over another and that the staircase Plaintiff used is the closest staircase to the front desk. (*Id.* at 41 & 56).

Plaintiff filed suit against ESA on November 29, 2005, in Oakland County Circuit Court. The action was removed to this Court based on diversity jurisdiction. Plaintiff's complaint consists of one count, "Negligence." On October 26, 2006, ESA filed the instant motion for summary judgment.

Standard of Decision

Summary judgment is proper when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## ANALYSIS

"In general, a premises possessor owes a duty to an invitee to exercise reasonable care to protect the invitee from an unreasonable risk of harm caused by a dangerous condition on the land." *Lugo v. Ameritech Corp., Inc.*, 464 Mich. 512, 516 (2001). However, this duty does not generally encompass removal of open and obvious dangers. "Accordingly, the open and obvious

4

doctrine should not be viewed as some type of 'exception' to the duty generally owed invitees, but rather as an integral part of the definition of that duty." *Id*. at 516.

"In sum, the general rule is that a premises possessor is not required to protect an invitee from open and obvious dangers, but, if special aspects of a condition make even an open and obvious risk unreasonably dangerous, the premises possessor has a duty to undertake reasonable precautions to protect invitees from that risk." *Id.* at 517.  The Court explained that, "with regard to open and obvious dangers, the critical question is whether there is evidence that creates a genuine issue of material fact regarding whether there are truly 'special aspects' of the open and obvious condition that differentiate the risk from typical open and obvious risks so as to create an unreasonable risk of harm, i.e., whether the 'special aspect' of the condition should prevail in imposing liability upon the defendant or the openness and obviousness of the condition should prevail in barring liability." *Id.* at 517-18.  The Court further explained:

> An illustration of such a situation might involve, for example, a commercial building with only one exit for the general public where the floor is covered with standing water.  While the condition is open and obvious, a customer wishing to exit the store must leave the store through the water.  In other words, the open and obvious condition is effectively unavoidable.  Similarly, an open and obvious condition might be unreasonably dangerous because of special aspects that impose an unreasonably high risk of severe harm.  To use another example, consider an unguarded thirty foot deep pit in the middle of a parking lot.  The condition might well be open and obvious, and one would likely be capable of avoiding the danger.  Nevertheless, this situation would present such a substantial risk of death or severe injury to one who fell in the pit that it would be unreasonably dangerous to maintain the condition, at least absent reasonable warnings or other remedial measures being taken.  In sum, only those special aspects that give rise to a uniquely high likelihood of harm or severity of harm if the risk is not avoided will serve to remove that condition from the open and obvious danger doctrine.

*Id*. at 518.

The Court also explained that:

5

> [I]n resolving an issue regarding the open and obvious doctrine, the question is whether the condition of the premises at issue was open and obvious and, if so, whether there were special aspects of the situation that nevertheless made it unreasonably dangerous. In a situation where a plaintiff was injured as a result of a risk that was truly outside the open and obvious doctrine and that posed an unreasonable risk of harm, the fact that the plaintiff was also negligent would not bar a cause of action. This is because Michigan follows the rule of comparative negligence. Under comparative negligence, where both the plaintiff and the defendant are culpable of negligence with regard to the plaintiff's injury, this reduces the amount of damages the plaintiff may recover but does not preclude recovery altogether.

*Id*. at 523. "Accordingly, it is important for courts in deciding summary [judgment] motions by premises possessors in 'open and obvious' cases to focus on the objective nature of the condition of the premises at issue, not on the subjective degree of care used by the plaintiff." *Id.* at 524.

ESA asserts that it is entitled to summary judgment because the condition of the darkened staircase was open and obvious. ESA further contends that there were no special aspects regarding the condition that gave rise to a uniquely high likelihood of harm such as to remove the condition from the open and obvious doctrine. In support of its position, ESA relies principally on *Lugo, supra*.

ESA also cites numerous unpublished opinions from the Michigan Court of Appeals: *Denoyer v. Curtis*, 2000 Mich.App. LEXIS 897 (2000)(Ex. H to Def.'s Br.); *Syck v. Amerco Real Estate Co.*, 1997 Mich.App. LEXIS 2417 (1997)(Ex.K); *Parkhurst v. Bartz*, 2001 Mich.App. LEXIS 1212 (2001)(Ex. N); *West v. Olympia Ent., Inc.*, 2002 Mich.App. LEXIS 440 (2002)(Ex. O); *Damic v. Dupuis*, 2003 Mich.App. LEXIS 503 (2003)(Ex. P); *Roth v. Ryan's Tavern at Ironwood, Inc.*, 1999 Mich.App. LEXIS 1824 (1999)(Ex. O); *LaRue v. Richard E. Jacobs Group*, 1999 Mich.App. LEXIS 2599 (1999)(Ex. R); *Cook v. Bengal*, (unpublished slip opinion attached as Ex. S) and *Cyers v. McFarland Foss Funeral Home, Inc.*, (unpublished slip opinion attached

as Ex. T). All of these cases, however, can be factually distinguished because they do not involve circumstances under which the open and obvious condition is effectively unavoidable.

ESA contends that the darkened staircase "was an open and obvious condition, which was completely avoidable as Plaintiff could have simply taken common sense precautions" for her safety such as "getting down on her bottom to slide down the stairs," using her "cell phone"[1] to illuminate the staircase, staying in her room until the lights were reinstated, and asking her friend to "assist her down the stairs." (Def.'s Br. at 12). ESA also contends that Plaintiff could have taken an alternative staircase in the Hotel, but presents no evidence that establishes that the other two staircases were illuminated at the time of the incident.

Plaintiff acknowledges that the darkened staircase was an open and obvious condition. She maintains, however, that there is a genuine issue of material fact as to whether special aspects of that condition created a uniquely high likelihood of harm because the condition was "effectively unavoidable."

Plaintiff asserts that this case is very similar to the example given in *Lugo* of an effectively unavoidable condition (*i.e.* a commercial building with one exit where customers have to go through standing water to exit the building). Plaintiff explains that she was inside the Hotel when the electricity went out and that she had no choice but to take the darkened staircase to exit the Hotel in order to check out and attend her doctor's appointment. She further states that she was not aware of any other staircases at the Hotel and that there is no evidence to

---

[1] Defense counsel acknowledged at the hearing that there was no evidence in the record relating to whether or not Plaintiff even had a cellular phone with her at the time of the incident. Thus, there was also no evidence that any such cellular phone had any ability to illuminate a darkened staircase.

indicate that the other staircases were illuminated in any event. In addition to *Lugo*, Plaintiff also relies on *Robertson v. Blue Water Oil Co.*, 268 Mich. App. 588 (2005); *Brousseau v. Daykin Elect. Corp.*, 2002 Mich.App. LEXIS 1807 (2002)(Ex. 8 to Pl.'s Br.) and *Wiater v. Great Lakes Recovery Centers, Inc.,* 2005 Mich.App. LEXIS 176 (2005)(Ex. 5 to Pl.'s Br.).

Plaintiff asserts that ESA's speculation as to what Plaintiff could have possibly done when exiting the Hotel is not only unrealistic and factually unsupported, it is irrelevant for the purposes of the motion because it disregards *Lugo*'s instruction that the proper focus is on the objective nature of the condition of the premises at issue, not on the subjective degree of care used by the plaintiff.

Although the danger posed by an unfamiliar, darkened staircase is open and obvious, the Court must still consider whether that condition was an unavoidable hazard. Based on the cases discussed below, Defendant's Motion for Summary must be denied because a genuine issue of material fact exists as to whether the open and obvious condition (the darkened staircase) has special aspects that give rise to a uniquely high likelihood of harm because the condition was effectively unavoidable.

In *Lugo*, the Court gave an example of such a situation where, due to the unique aspects of the condition, the condition was effectively unavoidable: "An illustration of such a situation might involve, for example, a commercial building with only one exit for the general public where the floor is covered with standing water. While the condition is open and obvious, a customer wishing to exit the store must leave the store through the water. In other words, the open and obvious condition is effectively unavoidable."

In *Wiater,* the plaintiff was an invitee at the time of the accident who parked in the

8

Defendant's parking lot in order to enter its facility. The plaintiff testified that the parking lot was entirely covered with ice at the time of the incident. The trial court granted summary disposition in favor of the defendant because the ice posed an open and obvious danger. The Michigan Court of Appeals reversed, concluding that there was sufficient evidence to create a genuine issue of material fact as to whether a special aspect made the condition unreasonably dangerous because it was effectively unavoidable to invitees who used the parking lot. *Wiater*, *supra,* at * 7-8. The court also rejected the defendant's argument that the condition did not involve special aspects because the plaintiff could have avoided walking on the ice by parking in an alternative lot because "if a plaintiff is injured as a result of a risk outside the open and obvious doctrine, a plaintiff's comparative negligence does not bar the cause of action, but only serves to reduce the amount of damages." *Id.* The court further explained that the subjective degree of care used by the plaintiff is immaterial to whether a condition is unreasonably dangerous and that the question is whether the condition of the premises was open and obvious, and if so, whether there were special aspects that made it effectively unavoidable.

In *Brousseau*, the trial court granted summary disposition in the defendant's favor, but the appellate court reversed. The appellate court determined that the open and obvious nature of the condition was not dispositive because the defendant could still be liable, notwithstanding an open and obvious danger, if the risk of harm remains unreasonable. After discussing *Lugo*, and the example of an unavoidable condition discussed within in it, the court concluded that the evidence before it was similar to that in *Lugo* as to an open and obvious condition that has a special aspect because it is effectively unavoidable. The court explained:

> The mound of snow in the present case blocked the only entrance to defendant's

9

> commercial loading dock where truck drivers were to make deliveries to defendant. Unlike many other conditions that are open and obvious where a person could simply avoid the hazard by walking around it, there was no possibility of doing so in this case. Indeed, the jury could reasonably conclude, based on the evidence presented, that in order to make his deliveries plaintiff effectively had no choice but to drive over the mound . . . plaintiff could not drive around the mound and had no reasonable alternative to make the delivery. Thus, the mound of snow was effectively unavoidable, forcing plaintiff to encounter the condition.

*Id*. at *10-11. The court further explained that:

> Defendant's argument that the mound was avoidable because plaintiff had the alternative of calling his employer or asking defendant to have its employees remove the mound is misplaced. We note that the hypothetical plaintiff in the *Lugo* example surely could have not exited the building and instead asked that an employee clean up the water. We believe that *Lugo's* example was utilized to emphasize that there can be liability imposed upon premises owners when the location of the open and obvious condition and the circumstance of the plaintiff (ie, an inability to exit without traversing over the water) are such that the plaintiff effectively had no choice but to encounter the condition.

*Id.*

The circumstances surrounding *Robertson*, *supra,* involved an unusually severe and uniform ice storm that covered the entire area surrounding defendant's gasoline station. Plaintiff was a truck driver, who was required by his employer to fuel his truck at the beginning of each day, regularly visited this particular station almost every weekday and had exhausted his windshield washer fluid before reaching defendant's station on the day in question. Plaintiff slipped on the ice and fell while he was walking from the truck to the station to purchase the fluid.

There was no real dispute that the condition was open and obvious, but plaintiff asserted that the condition had special aspects because it was effectively unavoidable. The appellate court affirmed the trial court's denial of defendant's motion for summary judgment because the jury

10

could conclude under the facts presented the condition was effectively unavoidable. The court rejected defendant's argument that the condition was not unavoidable because there was "clearly no alternative, ice-free path from the gasoline pumps to service station." The court also rejected the argument that plaintiff could have gone to another station, stating that a reasonable trier of fact could rationally find that plaintiff was effectively trapped because it would have been sufficiently unsafe to drive away from the premises without the windshield washer fluid. *Id*. at 594.

Another recent case, *Stanton v. Fitness Management Corp*., 2006 WL 238434 (Mich. App. Aug. 17, 2006) not cited by either party, also supports Plaintiff's position. The plaintiff in that case, a delivery person, made a delivery at the defendant's premises and slipped on ice while leaving the premises. Both parties conceded that the ice was an open and obvious condition, but plaintiff asserted that it contained special aspects because she had no choice but to enter and exit via the only door available to her. The appellate court affirmed the trial court's grant of summary judgment to the defendant because no special aspect existed. The court explained that: "Plaintiff argues that the slippery area represented a special aspect because she was obligated to face it in order to enter and exit the building and perform her contractual obligation. We disagree. Plaintiff was in control of her own actions and **was aware of the conditions before encountering them**. There may have been negative consequences for her had she chosen to avoid the danger by not entering the building, but that does not change the fact that she had a choice." *Id*. at *2 (emphasis added). The court further stated:

> We also are not persuaded that a special aspect is presented because, once she was inside the building, she had no choice but to face the danger in order to exit the building. Plaintiff's reliance on *Lugo, supra*, at 518, is misplaced. *Lugo* does

> offer the example of a customer wishing to exit a store who must face a pool of standing water at the only exit, rendering encountering the obstacle unavoidable. **The difference here is that the plaintiff was aware of the danger before entering the building in the first place.** The fact that, once she chose to encounter the danger and enter the building she would have to face the danger a second time in order to exit the building, does not change the analysis. At the time plaintiff discovered the danger, she did have a choice to enter or not. **Plaintiff's position might have merit if she was unaware of the danger before and during her entrance to the building and only discovered it once she was preparing to exit the building. In such a situation, it might be said she had no choice but to encounter the danger**.

*Id*. (emphasis added).

Here, it is undisputed that Plaintiff entered the Hotel when the building had electricity and the electricity then went off while she was inside her second-floor room. While Plaintiff was aware that there was no electricity the morning of the incident, she had to get to the main floor of the Hotel in order to check out and in order to leave the building to go to her doctor's appointment. Because the electricity was out, Plaintiff could not use the elevator nor could she use the Hotel's telephones to contact the front desk for assistance or advice. Plaintiff testified that she did not see a floor plan of the Hotel in her room and that she was only aware of the one staircase that she used, which was next to the elevator and is the closest staircase to the front desk. Moreover, although the Hotel has two other staircases, there is no evidence in the record to establish that those other staircases were illuminated at the time of the incident. Given the unique circumstances of this case, the Court concludes that there is sufficient evidence from which a reasonable juror could conclude that the condition, while open and obvious, had special aspects because it was "effectively unavoidable."

Like similar arguments made by the defendants in the above cases, ESA's speculative arguments regarding what it now believes Plaintiff should have done under these circumstances

*(i.e.*, try to scoot down the darkened stairs on her bottom side, remain in her room for an unknown period of time until the electricity was restored, etc.) are misplaced. Under *Lugo*, the proper focus here is on the "objective nature of the condition of the premises at issue, not on the subjective degree of care used by the plaintiff." *Lugo, supra*, at 524.

Accordingly, the Court shall deny ESA's Motion for Summary Judgment.

## CONCLUSION & ORDER

For the reasons set forth above, **IT IS ORDERED** that Defendant's Motion for Summary Judgment is **DENIED**.

s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: February 6, 2007

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 6, 2007, by electronic and/or ordinary mail.

s/Jennifer Hernandez
Case Manager